**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| WASEEM DAKER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. |
| JOE FERRERO, Commissioner, | : | 1:03-CV-2526-RWS |
| Georgia Department of | : | |
| Corrections, and JAMES | : | |
| DOCTOR, Director, Facilities | : | |
| Division, Georgia Department of | : | |
| Corrections, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

This case comes before the Court for resolution of: (i) Defendants'

Motion in Limine on Irrelevant Evidence [114]; (ii) Defendants' Motion in

Limine on Time-Barred Claims [115]; (iii) Defendants' [Second] Motion for

Summary Judgment [117]; (iv) Plaintiff's Motion to Stay and Motion for

Extension of Time [119];[1] and (v) Plaintiff's Motion to Stay [125].  The Court

---

[1] Plaintiff's Motion for Extension of Time [119] is hereby **GRANTED nunc pro tunc.**

AO 72A
(Rev.8/82)

has reviewed the entire record and enters the following Order.

## Background

Plaintiff, a former prisoner incarcerated at various Georgia state prison facilities, initiated this *pro se* civil action on August 22, 2003, against Defendants Joe Philip Ferrero, Acting Commissioner of the Georgia Department of Corrections ("GDC"), and James Doctor, Director of the Facilities Division of the GDC.  In his sole claim at issue in this case, Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that Defendants unconstitutionally limited his access to the courts by failing to provide adequate legal materials in the institutions in which he was incarcerated between 1997 and 2003.  On October 25, 2005, Plaintiff was released from prison, but he continues to pursue this litigation against Defendants in their individual capacities.

## I.  Facts

The facts of this case are largely undisputed, and, for purposes of considering Defendants' Second Motion for Summary Judgment, are taken in a light most favorable to Plaintiff.

### A.  Prison Law Library & Center for Prisoner Legal Assistance

In 1998, the Georgia Department of Corrections ("GDC") discontinued

updating the legal materials in its prison law libraries.   (See Daker Aff. [96-3]

¶ 3.)  In lieu of supplementing its libraries with updated legal books, the GDC

contracted with the Center for Prisoner's Legal Assistance ("CPLA") to provide

a case-copying service to prisoners who specifically requested a case by name

and legal citation.[2]  (Id. ¶ 4.)  CPLA employees also answered general legal

questions and occasionally undertook the representation of prisoners in state

habeas proceedings.  (Id. ¶ 4-5.)  But beyond providing general answers, the

CPLA generally declined to conduct legal research for prisoners whom it did

not represent.  Its employees also refused to perform specific rudimentary legal

tasks requested by Plaintiff, including "shepardizing" cases—i.e., checking

their citation history.  According to Plaintiff's undisputed testimony, "the only

way a prisoner could benefit from the case-copying service was if he already

knew of both the existence of a case and its complete cite."  (Id. at ¶ 5.)

---

[2] It is not clear from the record whether Defendants also discontinued updating statutory materials such as the United States Code.  Defendants, however, do not dispute Plaintiff's assertion that "[i]n 1998, the GDC stopped updating its law libraries."  (See Daker Aff. [96-3] ¶ 3.)  Thus, it appears that Plaintiff did not have access to updated statutory materials, such as the text of RLUIPA, unless such materials were requested by name and legal citation.

In March 1999, the GDC removed a substantial number of the then-available legal research books from its prison libraries, including titles such as "Shepard's Federal Citations, Shepard's Georgia Citations, Federal Practice Digest 3rd, Federal Practice Digest 4th, Georgia Digest 2nd, most of the Georgia Code, most of the United States Code, Georgia Blue and White Book, Daniel's Georgia Criminal Trial Practice, Daniel's Georgia Criminal Trial Practice Forms, Prisoner's Self-Help Litigation Manual . . . and a variety of other materials."  (Id. at ¶ 6.)

On July 15, 2003, Defendants terminated the CPLA's case-copying service and instituted new procedures to accommodate prisoner requests for legal materials.  Defendants state that between July 15, 2003 and April 14, 2004, inmates were "given assistance and access to the media resource specialists (inmate library clerks), the entire reference library, consultations with attorneys, privileged correspondences and legal assistance from CPLA." (See Defs.' Statement of Undisputed Material Facts [93-2] ¶ 2.)

Finally, on or about April 14, 2004, approximately three weeks after this Court's March 25th Order granting Plaintiff preliminary injunctive relief, the GDC provided inmates with access to electronic legal research.  (Id. ¶ 3.)  It

4

appears that this new electronic service provided updated statutory materials and updated case law.  Plaintiff claims, however, that despite this improvement, the electronic libraries still are "only updated every six months" and lack certain "needed materials," including most of the Federal Supplement Reporters. (Daker Aff. ¶ 17.)

### B.   Role of Defendants James Doctor and Joe Ferrero

The role that James Doctor and Joe Ferrero—the two individual Defendants remaining in this action—took in setting policy for, maintaining, or managing the law libraries within the Georgia Department of Corrections or overseeing the work of the CPLA is not clear from Plaintiff's allegations or evidence.  Although Plaintiff argues that Defendants Doctor and Ferrero were "responsible for establishing the custom and the policy of the GDC," (Pl.'s Resp. Br. at 3), the record does not reflect that Defendants promulgated a formal policy directing the manner in which the CPLA provided legal services to inmates.  Moreover, besides noting Defendants' titles and rank within the GDC, Plaintiff does not offer evidence indicating that Defendants Ferrero and Doctor participated in or were aware of a "custom" to limit the CPLA's services provided to inmates or otherwise deny prisoners access to legal materials.

Rather, the only evidence in the record on whether the two named Defendants participated in the alleged unconstitutional conduct at issue in this litigation appears to be Defendants' self-serving but unchallenged testimony. Defendant Ferrero, the Acting Commissioner of the GDC beginning in January of 2003, testified that "[a]t no time when I was the Acting Commissioner was I aware of or had any reason to believe that the prison administration and staff may have failed to follow the policies and procedures . . .which require that prisons provide meaningful access to the courts." (Ferrero Aff. ¶ 4.) Defendant Ferrero states that he had no knowledge that Plaintiff had been denied access to the courts until the filing of this lawsuit, and he did not "personally review any inmate grievances regarding denial of access to court." (Ferrero Aff. ¶ 5.)

The testimony of James Doctor, the Director of Facilities of the GDC, is to the same effect. Defendant Doctor states that he had "some input" in the formulation of Department of Corrections general policy, but he designated another official, William Lucas, with the responsibility to ensure the adequacy of GDC prison libraries and ensure compliance with court orders. (Doctor Aff. ¶ 4.) As "Inspector of Court Orders," Mr. Lucas's duties included "auditing prison libraries and [the CPLA] to ensure inmates access to court." (Doctor

6

Aff. ¶ 5.)  Defendant Doctor states that, unlike Mr. Lucas, he had "no personal involvement" in the events at issue in this litigation, that he was not aware of Plaintiff's allegations until this lawsuit was filed, and that he instead "relied on Mr. Lucas to oversee the running of the prison law libraries and ensure constitutional access."  (Doctor Aff. ¶¶ 5-7.)

The testimony of Mr. Lucas supports Defendant Doctor's testimony that he was uniquely responsible for implementing GDC policies regarding prisoner access to legal materials and ensuring their adequacy.  Mr. Lucas testified that "[i]t was my sole responsibility . . . to make sure that the law libraries contained the proper materials so prisoners would have access to the courts."  (Lucas Aff. ¶ 6.)  Moreover, Mr. Lucas testified that he audited the CPLA prior to 2002 and did not find or report any insufficiencies in the legal services the CPLA was providing to inmates.  (Id. ¶ 10.)  Plaintiff has not sued Mr. Lucas.

### C.      Plaintiffs' Alleged Actual Injuries

Plaintiff asserts two instances in which he claims he was denied access to the Courts—his *pro se* direct appeal of his criminal conviction and his civil

rights claims dismissed in <u>Daker v. Garner</u>, No. 1:99-CV-894-RWS, slip op. at 3 (N.D. Ga. Apr. 10, 2000).[3]

      1.    <u>Direct Appeal</u>.

Following his conviction of aggravated stalking in Georgia Superior Court, Plaintiff appealed *pro se.* He elected to represent himself in lieu of hiring an attorney or accepting state-appointed counsel.

Plaintiff claims that he was hindered in his *pro se* direct appeal of his criminal conviction because he was unable to discover several changes in the law occurring after the GDC discontinued updating the legal materials made available to Plaintiff. For example, Plaintiff claims that he failed to raise an issue on appeal relating to whether he was erroneously denied an opportunity to argue that the state's decision not to call certain witnesses at trial indicated that the testimony of those witnesses may have been exculpatory. At the time of Plaintiff's criminal trial, such an argument was considered improper under <u>Roper v. State</u>, 303 S.E.2d 103 (Ga. 1983). But in <u>Morgan v. State</u>, the Georgia Supreme Court overruled <u>Roper</u>, and reversed a conviction where a trial court

---

[3] The Court previously rejected Plaintiff's reliance on his claims in <u>Daker v. Wetherington</u>, No. 1:01-CV-3257-RWS (N.D. Ga. filed Nov. 28, 2001), as evidence that he sustained actual injury. (<u>See</u> Order of Jan. 18, 2007 at 17-18.)

refused to allow defense counsel to comment in his closing argument on the prosecution's failure to call certain witnesses.  476 S.E.2d 747, 751 (Ga. 1996). And in Smith v. State, 494 S.E.2d 322 (Ga. 1998), the Georgia Supreme Court held Morgan retroactively applicable to cases on direct review.  Plaintiff claims that the Georgia Supreme Court's holdings in Morgan and Roper, which were decided before the exhaustion of Plaintiff's direct appeal of his conviction, were not available to him at the time he drafted his appeal because of the obsoleteness of the GDC's legal materials.  Had they been, Plaintiff claims he would have raised a Morgan challenge in his direct appeal since at trial he was denied an opportunity to make an argument declared appropriate in Morgan.

Plaintiff also claims he was deprived of an opportunity to discover Mullins v. State, 511 S.E.2d 165 (Ga. 1999), which overruled a prior line of cases in holding that a defendant's failure to object to the impropriety of a prosecutor's closing argument generally waived that issue on appeal.  Id. at 166-67.  Under the previous rule, an improper closing argument could be grounds for reversal, even absent a timely objection, if it "in reasonable probability changed the result of the trial."  See Smith v. State, 498 S.E.2d 561, 564 (Ga. Ct. App. 1998).  Plaintiff argues that, because he was prevented from

discovering the Georgia Supreme Court decision in <u>Mullins</u>, he erroneously

relied on <u>Smith</u> in his direct appeal.  As a consequence, the Georgia Court of

Appeals summarily rejected his <u>Smith</u> challenge.  <u>See</u> <u>Daker v. State</u>, 533

S.E.2d 393, 400 (Ga. Ct. App. 2000) (rejecting Plaintiff's challenge to improper

comments made by prosecuting attorney on waiver grounds).  Plaintiff asserts

that, had he been provided with sufficient materials, he would have either

preserved the issue in his motion for a new trial or "argued the issue

differently" in his direct appeal.  (<u>See</u> Pl.'s Resp. to Defs.' Mot. for Summ. J.

[96-1] at 5.)

Moreover, Plaintiff relied on <u>Maxwell v. State</u>, 414 S.E.2d 470 (Ga.

1992) in his direct appeal, which, at the time, required trial courts to conduct

pretrial hearings and make certain factual findings before allowing evidence of

prior difficulties between the defendant and the victim to be admitted at trial.

<u>Maxwell</u>, however, was overruled in 1998 by <u>Wall v. State</u>, 500 S.E.2d 904,

907-08 (Ga. 1998), which held that the admission of such evidence need only

"be accompanied by an instruction from the trial judge explaining the limited

use to which the jury may put such evidence."  <u>Id</u>.  As a consequence, the

Georgia Court of Appeals summarily rejected Plaintiff's <u>Maxwell</u> challenge.

10

See Daker v. State, 533 S.E.2d 393, 398 (Ga. Ct. App. 2000). Plaintiff states

that he would not have relied on Maxwell, or devoted resources to that aspect of

his appeal, had he had access to updated legal materials, including the Georgia

Supreme Court's 1998 decision in Wall.

> 2.    Civil Rights Claim

In addition to his direct appeal, Plaintiff also contends that he was

impaired from litigating his civil rights claims in Daker v. Garner, No. 1:99-

CV-894-RWS, slip op. at 3 (N.D. Ga. Apr. 10, 2000), due to Defendant's denial

of updated legal materials. In Garner, this Court dismissed Plaintiff's claims

challenging "the removal of legal materials and restrictive access to legal

material" because Plaintiff's grievances relating to the subject matter of that

action remained pending in the prison system. The Court concluded that

Plaintiff had failed to fully exhaust his administrative remedies and thus

dismissed the action. See Daker v. Garner, No. 1:99-CV-894-RWS, slip op. at

3 (Apr. 10, 2000). Plaintiff claims that because he did not have access to

updated legal materials, including Alexander v. Hawk, 159 F.3d 1323 (11th Cir.

1998), or Moore v. Smith, 18 F. Supp. 2d 1360 (N.D. Ga. 1998) (Story, J.), "or

any other materials that would have directed [Plaintiff] to the status of the

PLRA litigation within the Eleventh Circuit," he filed his action "without being able to know of the technical filing requirements of the PLRA." (See Pl.'s Resp. to Defs.' Mot. for Summ. J. [96-1] at 7.)  His action was consequently dismissed for failing to comply with those requirements.  See Daker v. Garner, No. 1:99-CV-894-RWS, slip op. at 3 (Apr. 10, 2000).

By Order dated January 9, 2007, the Court concluded that the adverse consequences Plaintiff sustained in his direct appeal of his criminal conviction and the dismissal of his claims in Garner were sufficient to confer standing to pursue his claim for denial of access to the courts.  (See Order of Jan. 9, 2007 at 12-21.)

## II.    Procedural Posture

Prior to his release, this Court granted Plaintiff's Motion for a Temporary Restraining Order and required Defendants to provide Plaintiff reasonable access to updated legal materials.  (See Order of Mar. 25, 2004 [9] at 6.)  In that Order, the Court held that Plaintiff had demonstrated a likelihood of success in obtaining injunctive relief because of his inability to pursue his claims under the Religious Land and Institutionalized Persons Act ("RLUIPA") in Daker v. Wetherington, No. 1:01-CV-3257-RWS, without adequate access to updated

12

legal materials.  After Plaintiff was released from prison, however, this Court

dismissed Plaintiff's claim for injunctive relief as moot.[4]  (See Order of Feb. 17,

2006 [88] at 3.)

The Court declined Defendants' request to dismiss Plaintiff's claim for

monetary damages, which is what remains at issue in this litigation.  The Court

reasoned that the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §

1997e(e), does not foreclose an award of nominal damages against Defendants

in their individual capacities.  (Id.)  The Court left open the question of whether

Plaintiff could recover compensatory or punitive damages.  (Id. at 4 & n.2.)

In August of 2006, Defendants moved for summary judgment, arguing

principally that Plaintiff did not have standing to pursue a claim for denial of

access to the courts because he had not suffered "actual injury," as required by

Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

In an Order entered on January 9, 2007 [99], the Court denied Defendants'

Motion for Summary Judgment, finding that Plaintiff had presented sufficient

evidence of actual injury in pursuing his direct appeal of his criminal

---

[4] As a necessary result of the Court's prior rulings on sovereign immunity and
Plaintiff's lack of standing to pursue injunctive relief, the Georgia Department of
Corrections is hereby **DISMISSED** from the instant litigation.

13

conviction, see Daker v. State, 533 S.E.2d 393, 400 (Ga. Ct. App. 2000), and in

pursuing his civil rights claims in Daker v. Garner, No. 1:99-CV-894-RWS, slip

op. at 3 (Apr. 10, 2000).  (See Order of Jan. 9, 2007 [99] at 24.)  But the Court

agreed that Plaintiff suffered no actual injury in Daker v. Wetherington, No.

1:01-CV-3257-RWS, because he obtained the necessary access to legal

materials vis-a-vis the award of temporary injunctive relief in this litigation.

(Id.)

        After the denial of their first Motion for Summary Judgment, Defendants

moved for leave to file a second motion for summary judgment.  This time,

Defendants sought to raise the statute of limitations and qualified immunity as

defenses to Plaintiff's claims—remarkably—for the first time in the three-and-

a-half years of this litigation.  "Woefully unpersuaded and cognizant of the

prejudice that would befall Plaintiff were the Court to endorse Defendants'

delay," the Court declined to grant Defendant leave to file a second motion for

summary judgment, the denial of which would have entitled Defendants to

delay this litigation even further by filing an interlocutory appeal as of right

under Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817-18, 86 L.

Ed. 2d 411 (1985).  (See Order of Mar. 30, 2007 [108] at 5-9.)  The Court,

however, reminded Defendants that they might raise either or both defenses at trial.  (Id.)

At a hearing held on May 31, 2007 [116], Plaintiff recognized that there would be little pragmatism in preparing for and commencing a trial only to lose on a motion for judgment as a matter of law on the basis of the statute of limitations or qualified immunity.  On the Court's suggestion, Plaintiff agreed to consent to another round of summary judgment briefing on the issue of qualified immunity, in exchange for Defendants' waiver of its right under Mitchell to an interlocutory appeal should its motion be denied.  (See Transcript of Proceedings Held May 31, 2007 [116].)

Thus, with the Court's permission and by consent of the parties, Defendants have moved for summary judgment on statute-of-limitations and qualified-immunity grounds.  Defendants have also filed various motions related to the presentation of evidence at trial.  Plaintiff has moved to stay this litigation, but the time he seeks to postpone the trial of this case has elapsed, rendering his motions to stay moot.

**Discussion**

## I.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106

S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or

is not significantly probative, summary judgment may be granted."  Anderson,

477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at

586 (once the moving party has met its burden under Rule 56(c), the

nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

With this standard as a foundation, the Court turns to address the merits of Defendants' Second Motion for Summary Judgment.

## II.    Defendants' Second Motion for Summary Judgment

Defendants move for summary judgment, contending that Plaintiff's claims are barred by the statute of limitations and Defendants are entitled to qualified immunity.  The Court addresses each argument in turn.

### A.    Statute of Limitations

Defendants contend that the relevant two-year statute of limitations forecloses Plaintiff from pursuing his access-to-the-courts claim.  Plaintiff's direct appeal was rejected by the Georgia Court of Appeals on April 11, 2000, see Daker v. State, 243 Ga. App. 848 (2000), and Plaintiff's civil claims in Daker v. Garner were dismissed by this Court on April 10, 2000, Daker v. Garner, No. 1:99-CV-894-RWS, slip op. at 3 (N.D. Ga. Apr. 10, 2000). Plaintiff did not file this action until August 22, 2003, well over three years after the unsuccessful resolution of each case on which he relies for support for his claims in this case.

As Plaintiff correctly points out in his response, however, the statute of limitations does not begin to run until the resolution of the affected case becomes final.  "It is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  <u>Wallace v. Kato</u>, __ U.S. __, 127 S. Ct. 1091, 1095 (2007). As the Fifth Circuit has held, a cause of action for denial of access to the courts does not accrue until the litigation in which actual injury is alleged to have been sustained has been finally exhausted and the time for a direct appeal has expired.  <u>Shabazz v. Johnson</u>, 64 F. App'x 417, at *1 (5th Cir. Mar. 17, 2003). Until then, the adverse ruling sustained by the plaintiff is not necessarily permanent, and thus the plaintiff may not yet have standing to pursue a claim for denial of access to the courts.  Accordingly, to determine the date that triggered the statute of limitations, the Court looks to the date that the affected litigation became final.

After his direct appeal was rejected by the Georgia Court of Appeals, Plaintiff sought review by the Georgia Supreme Court and the United States Supreme Court.  The U.S. Supreme Court denied review on January 7, 2002, and denied a rehearing on March 18, 2002.  <u>See</u> <u>Daker v. State</u>, 243 Ga. App.

848 (2000), cert. denied 534 U.S. 1093 (Jan. 7, 2002), reh'g denied, 535 U.S. 952 (Mar. 18, 2002). Because this action was filed within two years of the time his direct appeal was exhausted in the United States Supreme Court, Plaintiff's claim premised on the injury he sustained in his direct appeal is timely.

The timeliness of Plaintiff's claim concerning his civil rights case fares worse, however. As stated, Plaintiff's civil rights claim in <u>Daker v. Garner</u> was dismissed on April 10, 2000. <u>Daker v. Garner</u>, No. 1:99-CV-894-RWS, slip op. at 3 (N.D. Ga. Apr. 10, 2000). Plaintiff sought an appeal, but his appeal was voluntarily dismissed on December 6, 2000. Judgment in <u>Daker v. Garner</u> became final upon Plaintiff's voluntary dismissal of his appeal. Plaintiff thus had two years from the date of the voluntary dismissal—until December 6, 2002—to file his access-to-the-courts. Because he did not do so, that claim is foreclosed by the statute of limitations.

Plaintiff asserts in his brief that the "continuing violation" doctrine salvages his access-to-the-courts claim premised on the injury he suffered in <u>Daker v. Garner</u>. The Court disagrees. An unconstitutional denial of access to the courts is a discrete violation which requires proof of actual injury. <u>Lewis v. Casey</u>, 518 U.S. at 356. Actual injury is sustained when the plaintiff, as a result

20

of being denied adequate access to legal materials, suffers a discrete adverse consequence, *i.e.*, the dismissal of a case, the loss of an appeal, or the denial of an untimely motion.  Wilson v Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998).  The statute of limitations is triggered at the time the adverse consequence becomes a permanent injury; it does not toll indefinitely during the time the prison continues to provide inadequate legal services.  Accord id. at 1291 ("[I]n an access-to-courts claim, a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic.") (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996)).

Moreover, as a result of Plaintiff's release from prison, Plaintiff may no longer seek an injunctive remedy in this action.  Because Plaintiff seeks only monetary compensation for the "consequence of a one time violation," as opposed to a prospective remedy for continuing violations, see Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003), the continuing violation doctrine does not salvage Plaintiff's claims for injuries sustained outside of the limitations period.

For these reasons, insofar as Defendants move for summary judgment on Plaintiff's claim premised on the alleged denial of access to the courts in his

pursuit of <u>Daker v. Garner</u>, No. 1:99-CV-894-RWS, slip op. at 3 (N.D. Ga. Apr. 10, 2000), their Motion is **GRANTED** because that claim is foreclosed by the 2-year statute of limitations.  The Motion is **DENIED** as to Plaintiff's claim addressing his direct appeal of his criminal conviction because that claim is not foreclosed by the statute of limitations.

> **B.**     **Qualified Immunity**

Defendants also raise qualified immunity as a defense to Plaintiff's access-to-the-courts claims.  The Court therefore turns to examine whether Defendants are entitled to qualified immunity on Plaintiffs' sole remaining claim in this case, regarding the injuries he allegedly suffered in pursuing his direct criminal appeal.

Qualified immunity provides "complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  Its purpose is to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing

litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

Qualified immunity is a question of law for the court. Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993). To be entitled to qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee, 284 F.3d at 1194. Neither party disputes that both Defendants were acting within the scope of their discretionary authority at all times relevant in this action.

The burden then shifts to the plaintiff. Lee, 284 F.3d at 1194. There is a two-part test to determine whether a defendant is entitled to qualified immunity. First, a court asks " 'whether [the] plaintiff's allegations, if true, establish a constitutional violation.' " Vinyard, 311 F.3d at 1346 (quoting Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). Where the issue of qualified immunity is presented on summary judgment, the Court resolves all disputed facts in favor of the plaintiff, and it decides whether the supposed facts amount to a violation of Plaintiff's constitutional rights. Purcell, 400 F.3d at

1320 (11th Cir. 2005).  Second, after sufficiently stating a constitutional violation, a court must ask whether the right was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  The salient question is whether the state of the law at the time of the alleged violation gave officials "fair warning" that their acts were unlawful.  Hope, 536 U.S. at 740; Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003); see also Vinyard, 311 F.3d at 1350-53 (articulating a tripartite analytical framework for ascertaining whether right is "clearly established").

While materially similar precedent or "broad statements of principle" can establish a right with sufficient clarity to deny an officer qualified immunity, they are not in all instances required to provide officials with the requisite notice.  See Vinyard, 311 F.3d at 1350-52.  In some cases, "the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful."  Id. at 1350.

24

With these foundational principles in mind, the Court examines (1) whether the facts, when considered in a light most favorable to Plaintiff, amount to a constitutional violation, and if so, (2) whether the law gives Defendants "fair notice" that their conduct was unconstitutional.

     1.    <u>Constitutional Question</u>

The sole remaining question in this case is whether Defendants denied Plaintiff access to the courts to pursue the direct appeal of his criminal conviction by providing inadequate law libraries and/or other legal services during Plaintiff's incarceration.

Defendants contend that Plaintiff has failed to bring forth evidence of a constitutional violation for two reasons.  First, Defendants contend that any limited access to books in the GDC prison libraries did not cause Plaintiff to be deprived of access to the courts because he had access to counsel and because he had access to the services provided by the CPLA.  Second, Defendants contend that neither Joe Ferrerro nor James Doctor personally participated in updating the libraries in either of the penal institutions in which Plaintiff was incarcerated during the relevant time period and only Mr. Lucas, a non-party to

this action, was or should have been aware of any insufficiency in the prison law libraries.

Plaintiff responds by arguing that this Court has already decided that Plaintiff has adequately alleged a constitutional violation in its Order of January 9, 2007. However, because Defendants limited their first argument on summary judgment to the issue of Plaintiff's *standing—i.e.*, whether Plaintiff suffered actual injury under <u>Lewis v. Casey</u>, 518 U.S. at 356, the Court did not have the occasion to consider whether Plaintiff adequately brought forth facts to establish that the individual Defendants remaining in this action unconstitutionally deprived him of access to the Courts. In its prior Order, the Court concluded only that Plaintiff had standing because losing his direct appeal of his criminal conviction and his civil rights action because of lack of access to adequate legal materials are the types of injuries required by <u>Lewis v. Casey</u>, 518 U.S. at 356, to state an access-to-the-courts claim. (Order of Jan. 9, 2007 at 13-24.) It does not follow from that conclusion that Plaintiff has adequately asserted a constitutional injury for purposes of the qualified immunity analysis. For the reasons provided below, the Court concludes that

the facts in the record, when viewed in a light most favorable to Plaintiff, do not amount to a constitutional violation.

The First Amendment safeguards the right "to petition the Government for a redress of grievances."  U.S. Const. amend. I.  In ensuring that right, the Supreme Court has held that "the fundamental constitutional right of access to the courts requires a state to provide "adequate law libraries or adequate assistance from persons trained in the law."  Bounds v. Smith, 430 U.S. 817, 828, 97 S. Ct. 1491, 1498, 52 L. Ed. 2d 72 (1977).  The Court has clarified, however, that while inmates must have "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts," there is no "abstract, freestanding right to a law library or legal assistance." Lewis, 518 U.S. at 351; see also Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998) (stating that the Constitution "guarantees the right of access to the courts. . .but prisoners have no inherent or independent right of access to a law library or to legal assistance"); Miller v. Donald, 132 F. App'x 270, 271-73 (11th Cir. 2005).

In determining whether the absence of legal resources or legal services has caused a prisoner to be denied access to the courts, courts examine what

27

services were available to a prisoner at the time of the alleged deprivation.  A

prison which does not offer a law library may meet its affirmative obligation by

providing "persons trained in the law."  <u>Carper v. DeLand</u>, 54 F.3d 613, 616

(10th Cir. 1995) (holding that provision of contract attorneys for assistance in

filing habeas petitions and initial pleadings in civil cases was sufficient to meet

constitutional mandate); <u>see also</u> <u>Wrenn v. Freeman</u>, 894 F. Supp. 244, 248

(E.D. N.C. 1995) (stating that "states need not provide both law libraries and

direct attorney assistance programs").  Indeed, the Supreme Court noted in

<u>Bounds</u> that providing an adequate law library was merely "one constitutionally

acceptable method to assure meaningful access to the courts" and that "our

decision here . . . does not foreclose alternative means to achieve that goal."

430 U.S. at 830; <u>see also</u> <u>Lewis</u>, 518 U.S. at 351 (stating that "prison law

libraries . . . are not ends in themselves, but only the means for ensuring 'a

reasonably adequate opportunity to present claimed violations of fundamental

constitutional rights to the courts'") (quoting <u>Bounds</u>, 430 U.S. at 825).

The offer of court-appointed counsel satisfies a state's obligation to

provide meaningful access to the courts.  <u>See United States v. Wilson</u>, 690 F.2d

1267, 1272 (9th Cir. 1982).  In <u>Wilson</u>, the Ninth Circuit held that a criminal

defendant who waived his right to counsel at trial could not later claim

inadequate access to a law library because the state met its obligation to provide

meaningful access to the courts by offering counsel.  It explained:

> The Supreme Court, in requiring meaningful access to the courts, has been careful to note that providing access to law libraries is but one of a number of constitutionally permissible means of achieving that objective. . . . Availability of legal assistance at government expense, if required, is a constitutionally permissible means of access.  When such adequate access is provided, as was here, an inmate may not reject the method provided and insist on an avenue of his or her choosing.

Id. at 1271.

At least five other federal circuit courts of appeals have held, in accord

with the Ninth Circuit's decision in Wilson, that an individual who voluntarily

declines the assistance of state-offered or court-appointed counsel has no

additional constitutional right to access a law library in preparing a *pro se*

defense or appeal.  Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996);

United States v. Smith, 907 F.2d 42, 45 (6th Cir. 1990); United States ex rel

George v. Lane, 718 F.2d 226, 233 (7th Cir. 1983); Kelsey v. State of Minn.,

622 F.2d 956, 958 (8th Cir. 1980); United States v. Chatman, 584 F.2d 1358

(4th Cir. 1973) ("[W]e do not read Bounds to give an option to the prisoner as

to the form in which he elects to obtain legal assistance.  The option rests with the government which has the obligation to provide assistance as to the form which that assistance will take.").

Although the Eleventh Circuit has not addressed the issue, district court decisions within this circuit are to similar effect.  E.g., Bell v. Hopper, 511 F. Supp. 452, 453-54 (D.C. Ga. 1981) (holding that plaintiff who declined court-appointed representation to pursue appeal *pro se* was not entitled to adequate state-provided law library); Green v. Kile, 2006 WL 1805849 (S.D. Ga. Jun. 29, 2006) (holding that plaintiff who elected to proceed *pro se* at criminal trial could not later complain about adequacy of access to legal reference materials).[5]

In this case, Plaintiff waived his right to appointed counsel and decided to proceed *pro se* in his direct appeal.  The right to counsel to appeal a felony

---

[5] See also Clayton v. Paulk, No. 7:07-CV-76, 2007 WL 2187392 (M.D. Ga. Jul. 27, 2007) ("Plaintiff's representation by counsel, however, satisfies plaintiff's right of access to the courts, notwithstanding that he was denied access to a legal book."); Angulo v. Fisher, No. 3:07-CV-66-LAC, 207 WL 1288696 (N.D. Fla. May 1, 2007) ("The Supreme Court has held that an inmate's right to 'meaningful access' to the courts requires prison officials to provide either adequate law libraries or adequate assistance from persons trained in the law, but not necessarily both and not necessarily the one preferred by the inmate."); Bennett v. Croft, 1:06-CV-2912-CAM, 2007 WL 81825, at *2 (N.D. Ga. 2007) ("Accordingly, because Plaintiff has an attorney representing him, he cannot make out a constitutional violation based on the allegedly inadequate law library at the Irwin County Detention Center.").

conviction is guaranteed by both the United States Constitution and the Georgia Constitution.  Douglas v. California, 372 U.S. 353 (1963); Mapp v. State, 403 S.E.2d 833, 834 (Ga. Ct. App. 1991) ("Defendants in criminal cases have both a federal and a state constitutional right to be represented by counsel . . . . This right extends to every indigent accused who indicates his desire to appeal.") (citing McAuliffe v. Rutledge, 231 Ga. 1, 3 (1973)) (citations omitted). Plaintiff has not alleged that Georgia failed to meet its obligation to offer court-appointed counsel to assist him with his direct appeal.  Instead, he claims a new and unprecedented constitutional right to *choose* between an offer of counsel and an adequate prison law library.  But an inmate "may not reject the method provided and insist on an avenue of his or her choosing."  Wilson, 690 F.2d at 1271.  By offering counsel, the state met its obligation to provide Plaintiff a meaningful opportunity to appeal his conviction.  Accordingly, Plaintiff has failed to demonstrate that the facts in the record amount to an unconstitutional denial of access to the courts.

2.   <u>Whether the Right is Clearly Established</u>

In addition to demonstrating a constitutional violation, Plaintiff must also come forward and demonstrate that the state of the law at the time of the alleged

31

violation gave officials "fair warning" that their acts were unlawful.  Hope, 536
U.S. at 740.  Even assuming *arguendo* that Plaintiff has come forth with
sufficient evidence of a constitutional violation, the Court finds no law that
would place Defendants on fair notice that their conduct was unconstitutional.

Plaintiff has not directed the Court to any binding precedent which would
give fair notice that providing appointed counsel, a case-copying service, and
some form of professional legal assistance does not meet the state's obligation
to provide meaningful access to the courts.  To the contrary, the Supreme Court
has noted that "a legal access program need not include any particular element
we have discussed" and has encouraged "local experimentation" in the manner
in which a state provides its prisoners with access to the courts.  Bounds, 430
U.S. at 832.  In Bounds, the Court observed that "[n]early half the States and
the District of Columbia provide some degree of professional or
quasi-professional legal assistance to prisoners."  Id. at 830-31.  Relying on the
Supreme Court's versatile approach, at least one circuit has held that a prison
need only provide assistance to prisoners in the initial pleading stage of a
federal habeas action or a civil action respecting conditions of confinement.
Carper, 54 F.3d at 616; see also Lewis, 518 U.S. at 354 (stating that the right to

access to the courts does not guarantee prisoners a right to "litigate effectively once in court"). Here, Plaintiff had a right to obtain state-provided counsel for the *entirety* of his appeal, not just the initial pleading stage. No law fairly establishes that opportunity as insufficient and unconstitutional.

Plaintiff also relies on <u>Johnson v. Avery</u>, 393 U.S. 483, 485-488 (1969), <u>Wilson v Blankenship</u>, 163 F.3d 1284 (11th Cir. 1998), <u>Howard v. Sharpe</u>, 266 Ga. 771, 772 (1996), and <u>Portis v. Evans</u>, 249 Ga. 396 (1982). None of those cases give fair warning that the conduct of Defendants in this case was unconstitutional.

In <u>Johnson</u>, the Supreme Court struck down a rule which forbade prisoners from assisting other prisoners in the filing of habeas petitions when no other form of assistance—such as either appointed counsel or a legal services organization—was available. <u>Id.</u> at 488. <u>Johnson</u> gives no guidance on the legality of substituting an updated law library with state-provided counsel.

In <u>Wilson</u>, the Eleventh Circuit affirmed the grant of summary judgment to prison officials who were alleged to have failed to provide the plaintiff with a law library. 163 F.3d at 1286. In doing so, the court merely restated the nature of the right to access of the courts recognized in <u>Bounds</u> and <u>Lewis</u>, concluding

that the plaintiff had failed to come forth with evidence that he suffered an actual injury.  Id.  It has no further relevance here.

Howard is inapposite because it affirmed an injunction imposed on a prisoner for filing frivolous actions in state court.  See 266 Ga. at 772.  And in Portis, the Georgia Supreme Court held that the plaintiff adequately asserted a constitutional deprivation where a prison had no law library and the prison only provided legal assistance once a month to prisoners.  249 Ga. at 396.  The plaintiff visited a legal counselor, who informed him that she was altogether unable to render legal assistance due to her inexperience.  Id. at 397.  Here, again, Plaintiff does not allege that he was deprived meaningful assistance by counsel in pursuing his direct appeal of his criminal conviction.  Rather, Plaintiff had the option of pursuing his appeal with the advice of counsel, but chose not to do so.

In sum, Plaintiff has failed to direct the Court's attention to any binding precedent that would clearly establish the conduct of Defendants was unconstitutional.  Insofar as Defendants move for summary judgment on the basis of qualified immunity, their Motion is **GRANTED**.

34

## III.    Other Motions

As a result of the Court's disposition above,  Defendants' Motion in Limine on Irrelevant Evidence [114], Defendants' Motion in Limine on Time-Barred Claims [115], Plaintiff's Motion to Stay [119], and Plaintiff's Motion to Stay [125] are **DENIED as moot**.

### Conclusion

For the foregoing reasons, Plaintiff's Motion for Extension of Time [119] is **GRANTED nunc pro tunc**.  Defendants' [Second] Motion for Summary Judgment [117] is **GRANTED**.  The **CLERK** is hereby **DIRECTED** to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff in this action.  Defendants' Motion in Limine on Irrelevant Evidence [114], Defendants' Motion in Limine on Time-Barred Claims [115]; Plaintiff's Motion to Stay [119]; and Plaintiff's Motion to Stay [125] are **DENIED as moot**.

**SO ORDERED** this  _26th_  day of March, 2008.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)